Ara Sahelian, Esq., [CBN 169257]
SAHELIAN LAW OFFICES
23046 Ave de la Carlota, Ste 600
Laguna Hills, CA 92653
Direct : 949 859 9200
Fax : 949 954 8333
email : sahelianlaw@me.com

Attorneys for Iraj Kashani; Simin Kashani; Westchester Mobil Inc.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**(Western Division - Los Angeles)**

| | |
|---|---|
| Brian Whitaker,<br><br>        Plaintiff.<br><br>        vs.<br><br>Iraj Kashani; Simin Kashani;<br><br>Westchester Mobil Inc.,<br><br>        Defendants. | CASE NO.: 2:18-cv-00346-JFW-PLA<br><br>**THE HONORABLE JOHN F. WALTER**<br><br>**[PROPOSED] STATEMENT OF DECISION**<br><br>Trial:  12/18/18<br><br>Hearing Date: October 15, 2018<br>Hearing Time: 1:30 p.m. |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## [PROPOSED] STATEMENT OF DECISION

While the Court's Notice, dated October 10, states that none of the parties had filed a proposed Statement of Decision, Defendants had uploaded to chambers a [Proposed] Statement of Decision, a Word Document form, on September 30, 2018.

Defendants will nevertheless re-upload an amended Proposed Statement of Decision which incorporates the Request for Judicial Notice which was filed subsequent to the Reply Brief by Plaintiff.

_____

## [PROPOSED] STATEMENT OF DECISION
## ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
### I. INTRODUCTION

On January 16, 2018, plaintiff, Brian Whitaker, filed the instant action against defendants Iraj V. Kashani, Simin Kashani, and Westchester Mobil Inc. ("Defendants"), asserting claims for violations of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. and California's Unruh Civil Rights Act, California Civil Code Section 52, et seq. The complaint seeks (1) injunctive relief compelling defendant to comply with the ADA and the Unruh Civil Rights Act; (2) damages under the Unruh Civil Rights Act; and (3) attorneys' fees, litigation expenses, and costs of suit, pursuant to 42 U.S.C. section 12205 and California Civil Code sections 52 and 55.56(a)- (c). On February 28, 2015, defendants filed a timely Answer to the Complaint. Dkt.14

1887

Mediation was held on July 11, 2018 . The parties were unable to reach settlement as Plaintiff refused to counter Defendants' opening offer to settle.

## II. BACKGROUND

Mr. Iraj Kashani is the owner-operator of Westchester Mobil Inc. ("Westchester Mobil") located at 6600 W. Manchester Ave., Los Angeles. Mr. Whitaker avers that he went to Westchester Mobil, by bus, in July 2017; that there was a lowered counter, but that this counter was "not used because the higher transaction counter is separated by a glass window," that he "necessarily had to conduct his transactions over the higher counter, which is 40 inches high." Complaint ¶ 13. Dkt. 1. Mr. Whitaker further avers that the point- of-sale machine, consisting of a card reader, keypad, and screen were placed "on top of the higher transaction counter ... higher than allowed by law because the card reader and buttons are 47 inches high," that he "was also unable to reach over the protruding counter to reach the point of sale machine..." and that "the point-of-sale machine was not easily visible and usable," and that as a result of "the inaccessible card reader and transaction counter, an employee had to assist the plaintiff with his transaction." Id. ¶ 18. These allegations are misleading. While it is true that a transaction counter for able-bodied persons has a point of sale machine that is beyond the reach of a disabled patron in a wheelchair, there is a *separate* accessible counter, with a retractable point of sale machine, available to a disabled patron. There is a sliding window at the accessible lower transaction counter. SUF ¶ 32.

Finally Mr. Whitaker avers that "In areas used for transactions where counters have cash registers and are provided for sales or distribution of goods or services to the public, at least one of each type shall have a portion of the counter

which is at least 36 inches in length with a maximum height of 36 inches above the floor ... that no such accessible counter has been provided, in violation of the ADA." Complaint ¶ 31, 32. The allegation is also misleading. While the recitation of the architectural guidelines is true, the allegation that no such accessible counter was available for Mr. Whitaker to use is false. SUF ¶ 50.

Mr. Kashani purposefully keeps the attendants' areas behind the transaction counters enclosed in bulletproof glass. He himself has taken a bullet years ago. The area in which Westchester Mobil is located is a high-crime area, and the only way that he can attract employees is to ensure their safety. SUF ¶ 26.

The sales checkout area includes *two* transaction counters. The first is near the corner and is designed for able-bodied patrons who choose to transact standing up. The point-of-sale machine at that transaction counter is placed at a height where able-bodied people are able to comfortably use while standing. SUF ¶ 27. Immediately to the right of the able-bodied transaction counter is a lower transaction counter with a retractable point- of-sale machine for use by patrons with disabilities, particularly those confined to a wheelchair. SUF ¶ 28. The accessible transaction counter was built into the sales booth for many years, well before Mr. Whitaker allegedly visited the property. SUF ¶ 29.

The accessible transaction counter is a *two-tiered* counter, providing the attendant with an added measure of safety, in that the portion between the upper and lower tier is backed by a bulletproof steel shield. It allows the attendant additional coverage should an armed robbery take place. SUF ¶ 30.

The accessible transaction counter has always been under 34 inches in height and

36 inches in length. Additionally, it has ample space, certainly above and

beyond the requirements of the Americans with Disabilities Architectural Guidelines, for a wheelchair to approach parallel to the lower counter. SUF ¶ 31.

Attendants at Westchester Mobil are trained to help disabled patrons based on their wishes. If they approach the lower transaction counter, the attendant will open the window and place a retractable point-of-sale machine on the lower counter should a disabled patron wish to use a credit or debit card. SUF ¶ 32. Alternatively, if a disabled patron wishes to pay in cash, the entire transaction takes place at the lower counter. The goods and the cash are all picked up from the lower transaction counter, scanned, and placed back onto the lower transaction counter. SUF ¶ 33. Irrespective of whether the disabled patron chooses to pay using cash or card, attendants at Westchester Mobil make sure that the disabled patron need not reach above the lower transaction counter. SUF ¶ 35.

Naturally, most sales occur at the able-bodied transaction counter, as in excess of 99.9% of customers are able-bodied and choose to use it. The retractable point-of-sale machine is not left out in plain sight on the lower transaction counter because it tends to create confusion. SUF ¶ 34.

Occasionally, a disabled patron such as Mr. Whitaker will ask an attendant for help with reaching a bottle of soda or any other item that is placed on an upper shelf. Attendants at Westchester Mobil have been trained to provide personal service. If the disabled patron chooses not to approach the lower transaction counter, then the attendant is trained to ring up the items and bring them back, along with change, to the disabled patron. SUF ¶ 38.

In his moving papers to the within Motion for Summary Judgment, Mr. Whitaker asserts that rather than being able to independently purchase snacks at Westchester Mobil, he was unable to conduct the transaction on his own because

the transaction counter and card reader ("point-of-sale device") were inaccessible to him. This directly contradicts Mr. Whitaker's deposition testimony. Mr. Whitaker testified that he entered the store and immediately asked the attendant to help him reach for a bottle of Sprite in a refrigerator to his right, near the door. SUF ¶ 51. He simultaneously gave the attendant two candy bars, and a bag of chips, all the while remaining near the entrance of the store. SUF ¶ 52.

Mr. Whitaker did not signal his intent to use a credit card. SUF ¶ 55. He was silent as to his preference to use a credit card. SUF ¶ 32. Instead, he paid in cash. SUF ¶ 56. Had he communicated this, a credit card reader would've been placed on the lowered accessible transaction counter for his use. SUF ¶ 32. He paid in cash and waited for the attendant to ring up the items and bring back his change. SUF ¶ 53.

Mr. Whitaker saw a lowered accessible transaction counter, but did not approach it. SUF ¶ 54. He contends that the reason he did not approach the lowered accessible transaction counter was because he did not recognize it as usable, as there were items displayed on the upper tier, and because the card reader was not placed on the lower counter. SUF ¶ 57. Mr. Whitaker had filed in excess of forty cases against merchants prior to Westchester Mobil. In nearly all case, Mr. Whitaker alleged the accessible counters were too high. He was well aware that he had a right to approach the accessible counter and ask for a card reader. He did not. There are no codes, guidelines, or regulations that mandate that movable objects cannot be placed in or around the accessible counter, SUF ¶ 49, and there are no codes, guidelines, or regulations that point-of-sale machines (card readers) be visible at accessible counters at all times. SUF ¶ 48.

Mr. Whitaker assumed that the glass barrier above the accessible transaction

counter was impenetrable (when in fact it was a sliding window), SUF ¶ 58. He also "assumed" that there was no reachable card reader (when in fact one was available for the asking). SUF ¶ 59. Mr. Whitaker argues that the "lower ledge" was not to code, which necessitated that the transaction occur at the "higher transaction counter that connects to safety glass" (the transaction counter used by able-bodied persons). The accessible transaction counter is to code. The accessible transaction counter allows for the parallel approach of a wheelchair; it provides a 36 inch long lowered counter, per code; it is 33 inches from the floor, per code. SUF ¶ 60.

Mr. Whitaker makes much of the two-tier arrangement of the accessible counter, " the transaction must necessarily occur at the higher counter." This is simply not true. All Mr. Whitaker had to do (to which he admitted) was to leave the items on the lower transaction counter and allow the attendant to ring up the goods and place his change back on the lowered counter. SUF ¶ 61.

Mr. Whitaker seems intent on inventing restrictions to the Americans With Disabilities Act Architectural Guidelines where none exist. A two-tier arrangement, as in here, is perfectly acceptable where an attendant stands behind the transaction counter. The subject matter is covered in the Guidance to the 2010 ADA standards, at page 142. SUF ¶ 46. This is a document that is well known to plaintiff's counsel, as the firm manages to bring in excess of 1500 accessibility lawsuits per year in the Central District alone (notwithstanding the other Districts in California).

The design and arrangement of the lowered transaction counter at Westchester Mobil is to code. SUF ¶ 39-47. There are no alterations needed. Mr. Whitaker intentionally avoided the accessible transaction counter, paid in cash, agreed to have the attendant ring up the goods and bring his change, while he remained near the entrance door. He did not ask to use the credit card reader, and

did not complain. In fact, he was very pleased with the attendant's service. SUF ¶ 62.

Finally, Mr. Whitaker's assertion that he experienced "difficulty, discomfort and embarrassment" is puzzling. It was Mr. Whitaker who asked to have the attendant fetch him a cold drink (the Sprite). SUF ¶ 51. Mr. Whitaker does not think it is embarrassing to ask an attendant to fetch him a Sprite, but feels embarrassed when an attendant brings him change. It is worth noting that no one else was present in the store at the time. SUF ¶ 63.

### III. LEGAL STANDARD ON A MOTION FOR SUMMARY JUDGMENT

Defendants, here, set out specific facts showing a genuine issue for trial in order to defeat the motion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); Fed. R. Civ. P. 56(c), (e). Defendants do not simply rely on the pleadings. They do more than make "conclusory allegations [in] an affidavit." *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990); see also *Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).* They make a showing sufficient to establish the existence of an element essential to Plaintiff, and on which Plaintiff will bear the burden of proof at trial." Id. at 322.

### IV. DISCUSSION

The gravamen of the instant action is that the accessible chek-out counter at Westchester Mobil purportedly failed to comply with the Americans with Disabilities at Architectural Guidelines, and Mr. Whitaker suffered as a result.

#### A. The ADA Claim

#### Article III Standing

To establish standing in the instant case, a plaintiff must demonstrate that he

**[PROPOSED] STATEMENT OF DECISION - Page 8 -**

has suffered an injury-in-fact, that the injury is traceable to the defendant's actions, and that the injury can be redressed by a favorable decision. Fortyune v. Am. Multi-Cinema, Inc., 364 F.3d 1075, 1081 (9th Cir. 2004). In addition, "to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [plaintiff] must demonstrate a 'real and immediate threat of repeated injury' in the future. Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (citation omitted). More specifically, an ADA plaintiff can show a likelihood of future injury sufficient to justify injunctive relief (1) if he "intends to return to a noncompliant accommodation and is therefore likely to reencounter a discriminatory architectural barrier," or (2) if "discriminatory architectural barriers deter him from returning to a noncompliant accommodation." Id. at 950.

Mr. Whitaker has no Article III standing: Mr. Whitaker here cannot demonstrate that he suffered an injury-in-fact in that he made a conscious decision not to approach the accessible transaction counter, and instead held up his money and assented to have the attendant take the goods and cash, ring up the items, and bring them back with this change. Not once did he ask for a card reader / point-of-sale-machine. Had Mr. Whitaker communicated his wants to the attendant, he would have been accorded all the accommodations available to persons with disabilities, in accordance with the ADA.

Moreover, Mr. Whitaker has no need to return to Westchester Mobil to purchase candy bars, drinks, or chips. He lives 1 hour and 45 minutes away from Westchester Mobil by bus. SUF ¶ 64. He also emphatically stated that he would not bypass other convenience stores along the way to specifically return to Westchester Mobil. SUF ¶ 64.

Mr. Whitaker's testimony regarding his encountering of barriers at

Westchester Mobil does not establish that he has standing to seek remedial relief under the ADA and to require Defendants to comply with the ADA. 42 U.S.C. § 12188(a)(1)—(2); *Cf. Pickern v. Holiday Quality Foods Inc*., 293 F.3d 1133, 1138 (9th Cir. 2002) (holding imminent injury established when plaintiff "state[d] that he prefers to shop at Holiday markets and that he would shop at [defendant's] Paradise market if it were accessible").]

**Plaintiff's Prima Facie Case under the ADA**

To set forth a prima facie case under Title III of the ADA, plaintiff must show that:

(1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability. Arizona ex rei. Goddard v. Harkins Amusement Enterprises, Inc., 603 F.3d 666, 670 (9th Cir. 2010). First, Defendants concede Mr. Whitaker qualifies as a disabled person under the ADA, as he is a quadriplegic who uses a wheelchair for mobility. 42 U.S.C. § 12102(1)(A). Second, because retail stores are expressly identified under the ADA as places of public accommodation, 42 U.S.C. § 12181(7)(B), Westchester Mobil qualifies as a place of public accommodation. With respect to the third element—whether Mr. Whitaker was denied public accommodations on the basis of disability — the accessible transaction counter at Westchester Mobil was, at all relevant times, in compliance with the ADAAG, and Mr. Whitaker fails to state a claim. SUF ¶ 50.

**The absence of Architectural Barriers.**

Under Title III of the ADA, "[n]o individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services,

facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Unlawful "discrimination" occurs under the ADA when features of an accommodation subject an individual on the basis of a disability "to a denial of the opportunity of the individual . . . to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(b)(1) (A)(i).

Mr. James, a California Access Specialist, deems the accessible counter described by Mr. Kashani as fully compliant with the applicable codes, §904.4 of the Americans with Disabilities Architectural Guidelines. What follows is Mr. James' analysis of the accessible counter:

*The accessible check-out aisle and sales and service counter complies with all of the relevant sections of Section 904 of the (2010) ADAAG (the most recent). The sales area includes two transaction counters. The first is near the corner and is designed for able-bodied patrons who choose to transact standing up. The point-of-sale machine at that transaction counter is placed at a height where able-bodied people are able to comfortably reach it while standing. Immediately to the right of the able-bodied transaction counter is a lower transaction counter. It is designed for patrons confined to wheelchairs. It has a sliding window, behind which has a retractable point-of-sale machine. The point-of-sale machine can easily be brought out and placed on the lower transaction counter. The accessible transaction counter was designed to accommodate a parallel approach, meaning that a wheelchair approaches the counter and positions itself alongside it, as opposed to head-on. It complies with section 904.4.1. All portions of the counter are located adjacent to a walking surface in compliance with section 904.2; The accessible counter is located*

[PROPOSED] STATEMENT OF DECISION - Page 11 -

*next to a cash register in compliance with section 904.2; The accessible transaction counter is two-tier. It is in compliance with the 2010 ADAAG. A two-tier design is acceptable where an attendant is present behind the transaction counter itself. In fact, the GUIDANCE to the 2010 ADAAG, published by the Department of Justice, at section 904.4, page 142, states in relevant part: "Section 904.4 of the 2010 Standards also clarifies that the accessible portion of the counter must extend the same depth as the sales or service counter top. Where the counter is a single-height counter, this requirement applies across the entire depth of the counter top. Where the counter is a split-height counter, this requirement applies only to the customer side of the counter top. The employee-side of the counter top may be higher or lower than the customer-side of the counter top." The accessible transaction counter is 36 inches long and no more than 36 inches high above the finish floor and provides an adjacent clear floor space exceeding 30 inches by 48 inches all in compliance with sections 305 and 904.4.1 of the ADAAG. I am not aware of any code, guideline, or regulation that requires a point-of-sale machine (credit card reader) to be on display at all times at an accessible counter. In most businesses, the point-of-sale machine is left behind the counter at the accessible counter and brought out when needed. Further, I am not aware of any code, guideline, or regulation that requires the accessible transaction counter to be entirely free of objects, such as advertising material and other merchandise, so long as they are movable and do not interfere with a transaction.*

*To summarize, the accessible counter at Westchester Mobil complies with the Americans with Disabilities Act Architectural Guidelines.* SUF ¶¶ 39-50.

Mr. Whitaker makes much of the fact that the accessible counter does not extend the same depth as the able-bodied transaction counter. The able-bodied

counter measures less in depth than the accessible counter. Further, the able-bodied counter is much narrower than the accessible counter, and has an equal amount of products displayed. Moreover, as indicated above, Where the counter is a split-height counter, as in here, the requirement that the accessible portion of the counter top "extend the same depth as the sales or service counter top" does not apply.

If Mr. Whitaker had simply placed his goods on the accessible transaction counter and asked for a card reader, the attendant would have placed the retractable point-of-sale machine on the accessible transaction counter, rung up his items, and placed his receipt along with the items back on the accessible transaction counter, as intended.

Plaintiff's argument that Mr. Whitaker would have been forced to conduct his transaction at the upper tier has no factual support. This issue has been thoroughly addressed by the Department of Justice, as indicated above. It is well understood that merchants who have attendants working behind a service counter have the leeway to use a split-height accessible counter. The purpose of accommodating a disabled patron is accomplished, all the while allowing the merchant to make use of the additional space.

Plaintiff's reliance on *Salinas v. Pacific Castle Newport I, LLC, Case 8:14-cv -01233-CJC-AN* in his Reply, in Support of the Motion for Summary Judgment, is misplaced. The moving papers in the Salinas case reveal that the GUIDANCE ON THE 2010 ADA Standards for Accessible Design was <u>not</u> brought to the attention of Judge Carney. Neither the District Court, or the Ninth Circuit, had been advised of the Guidelines mandating that a split-height counter was and continues to be an acceptable design. Defendant CBC in *Salinas* had failed to cite proper authority:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

"Further, **CBC** has not cited any authority contrary to the district court's interpretation of the ADAAG guideline. The district court did not abuse its discretion in determining that no mistake of fact or law existed that entitled **CBC** to relief from the judgment under Rule 60(b)(1)." *Salinas v. CBC Rest. Corp.*, 708 Fed. Appx. 433-434. *Salinas,* therefore, is not controlling.

California's Labor Code Section 6401 states: "Every employer shall furnish and use safety devices and safeguards, and shall adopt and use practices, means, methods, operations, and processes which are reasonably adequate to render such employment and place of employment safe and healthful. Every employer shall do every other thing reasonably necessary to protect the life, safety, and health of employees." Westchester Mobil is located in a high-crime area immediately north of LAX. Mr. Kashani is under a legal duty to offer any reasonable means to guarantee the safety of his employees. The split-height counter with the bulletproof plate provides that extra measure of safety.

In accordance with the foregoing, Mr. Whitaker fails to identify architectural barriers at Westchester Mobil, and his stated intent to return to Westchester Mobil lacks credibility. Mr. Whitaker is therefore *not* entitled to the injunctive relief he seeks under the ADA.

**B. Unruh Civil Rights Act**

A violation of the rights of a person with a disability under the ADA is a *per se* violation of the Unruh Civil Rights Act. Cal. Civ. Code § 51(f). To recover statutory damages under the Unruh Act, a plaintiff must have been denied "full and equal access." Id. § 51(b). A plaintiff is so denied if he encounters the barrier on a particular occasion or if he is deterred from accessing a place of public accommodation and the violation is such that it results in **difficulty**, **discomfort**, or

**embarrassment**. Id. § 55.56(a), (b), (c).

For reasons explained above, there exists no violation of the ADAAG.

Consequently, Mr. Whitaker was not denied full and equal access. He did not encounter barrier(s) to access at Westchester Mobil and cannot subsequently feel deterred from returning due to his knowledge of the continued barriers and the **embarrassment** he alleges he suffered as a patron. Mr. Whitaker is therefore not entitled to a statutory award of $4,000 per visit, pursuant to California Civil Code §§ 52(a) and 55.56 (e).

**V. CONCLUSION**

Mr. Whitaker's Motion for Summary Judgment is denied in its entirety.


Dated: _____


_____

The Honorable John F. Walter

Judge of the District Court,

Central District of California